NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180262-U

NO. 4-18-0262

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 4, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| MAURICE MORRIS, | ) | No. 17CF252 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer Hartmann Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) The evidence was sufficient for a reasonable jury to find defendant guilty of
domestic battery beyond a reasonable doubt.

(2) The trial court did not violate Illinois Supreme Court Rule 431(b) (eff. July 1,
2012) in admonishing the jury.

¶ 2     In February 2018, the trial court conducted a jury trial on the State's two domestic

battery charges filed against defendant, Maurice Morris. The State presented evidence that

defendant shoved cake in the victim's face and then forcefully held her around her neck against a

wall. The jury found defendant guilty of both counts.

¶ 3     Defendant filed this direct appeal, raising two claims of error. First, he argues the

evidence was insufficient to convict him when the victim's testimony was so inconsistent and

improbable that no reasonable jury could have found him guilty beyond a reasonable doubt.

Second, defendant claims the trial court violated Rule 431(b) when it failed to properly admonish

each potential juror during *voir dire* of the four constitutional principles essential to a fair trial. After our review of the issues presented, we affirm the trial court's judgment.

¶ 4                              I. BACKGROUND

¶ 5                              A. The Charges

¶ 6        In August 2017, the State filed a three-count information against defendant, alleging he committed the following offenses after having two previous convictions of domestic battery: (1) domestic battery in violation of section 12-3.2(a)(1) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/12-3.2(a)(1) (West 2016)), a Class 4 felony, for knowingly causing bodily harm to Bobbie Jo Rodrick Woods, a household member, by choking her (count I); (2) domestic battery in violation of section 12-3.2(a)(2) of the Criminal Code (720 ILCS 5/12-3.2(a)(2) (West 2016)), a Class 4 felony, for knowingly making physical contact of an insulting or provoking nature with Woods by striking her with cake (count II); and (3) unlawful interference with reporting of domestic violence in violation of section 12-3.5 of the Criminal Code (720 ILCS 5/12-3.5 (West 2016)), a Class A misdemeanor, for attempting to prevent Woods from calling the police after committing an act of domestic violence (count III).

¶ 7        B. Admonitions and Questions to Prospective Jurors

¶ 8        On February 16, 2018, the parties selected a jury.

¶ 9        The trial court admonished 18 of the prospective jurors about "certain propositions of law that [they] must be willing to follow." The court said: "It's very important that you understand these principles of law and that you are willing to accept them and follow them." The court admonished the prospective jurors that (1) defendant was presumed innocent, (2) the State must prove defendant's guilt beyond a reasonable doubt, (3) defendant does not have to prove his

innocence, and (4) defendant does not have to present any evidence or testify. The following exchange occurred:

> "THE COURT: So, by a show of hands, do each of you understand these principles of law? If so, please [raise] your hands.
>
> PROSPECTIVE JURORS: (All raise hands.)
>
> THE COURT: And do each of you accept these principles of law?
>
> PROSPECTIVE JURORS: (All raise hands.)
>
> THE COURT: Everybody understands and accepts."

¶ 10                                C. The Jury Trial

¶ 11                        1. *Testimony of Bobbie Jo Rodrick Woods*

¶ 12        The State first called the victim, Bobbie Jo Rodrick Woods, who testified as follows. She and defendant, who she identified in court, had been in a relationship for two years and were engaged to be married. Woods explained she had only 20% hearing in both ears, so she generally wore hearing aids. In August 2017, the couple lived together in a two-bedroom home in Dwight, Illinois.

¶ 13        During the overnight hours on August 6, 2017, and the early morning hours of August 7, 2017, Woods got out of bed around midnight to use the restroom without wearing her hearing aids. She then got some of her daughter's birthday cake and went into the living room. Defendant came into the living room. Woods could tell he was upset and was talking, but she could not hear what he was saying. Because she could not hear him, Woods did not respond. Defendant walked over to her and shoved the plate of cake into her face. Woods stood up. She said she "was furious." Defendant pushed her into the wall and placed his hand on her throat. He held her for

less than a minute. When he let go, she "was still furious." She told defendant she was calling the police. She walked to the bedroom to get her hearing aids and collected her belongings to leave.

¶ 14　　　　Woods said she left the residence and drove to Pontiac, Illinois, where her daughter was working. Woods told her what happened, and her daughter called the police. Woods drove to the police station in Dwight. The police took a statement and took photos of her scratches. People's exhibit No. 1 was a photo of scratches on her neck. People's exhibit No. 2 was a photo of scratches on her chest.

¶ 15　　　　In October 2017, Woods said she completed a complaint refusal form mentioning that her family had a tradition of shoving cake in each other's faces during birthday parties. Woods acknowledged that at the time she completed the complaint-refusal form, she and defendant were in a relationship. They reportedly have since broken up.

¶ 16　　　　　　　　　　　2. *Testimony of Watson McKee*

¶ 17　　　　Watson McKee was a Dwight police officer and took Woods's statement on the night of the incident. He had taken the photos of Woods, and he identified those photos in court. After meeting with Woods, McKee drove to defendant's residence. Defendant told McKee "he had put cake in [Woods's] face." McKee said things were "knocked over and knocked off the wall, and there was cake smeared around on the carpet." The State rested.

¶ 18　　　　　　　　　　　3. *Testimony of Defendant*

¶ 19　　　　Defendant testified on his own behalf. He admitted the two argued on the night of the incident. He said Woods has "a gambling problem," so they were arguing over "some finances, some money." He said, at some point in the evening, "everybody had cake in their face," including him, as it was a tradition when they celebrated birthdays. During the argument, Woods flipped over a sectional couch and "went stomping down the hall." She gathered her belongings and left.

Defendant went to bed and was eventually awoken by the police. Defendant was shown the State's exhibits and said the only time he saw "those marks" was in the photos.

¶ 20                                    4. *Rebuttal Testimony of Officer McKee*

¶ 21            In rebuttal, the State re-called McKee, who said he asked defendant if Woods had hit him and defendant said no. And, defendant did not indicate he had been struck by cake. McKee did not observe any cake on defendant, but he did observe cake on Woods. Defendant denied Woods had been violent with him that night; and McKee did not notice any injuries on defendant. McKee recalled defendant stating the couple was arguing over gambling. McKee saw "things tipped over," but he did not recall whether he asked defendant about that. He said defendant told him "she was throwing things or knocking things over or something to that effect."

¶ 22                                    5. *The Jury's Verdict*

¶ 23            The State offered People's exhibit No. 3, a certified copy of defendant's felony conviction for criminal damage to property. The trial court admonished the jury about the limited use for credibility purposes only of this document. After considering the evidence and the arguments of counsel, the jury found defendant guilty of both counts of domestic battery.

¶ 24                                    D. Sentencing

¶ 25            On April 4, 2018, the parties convened for sentencing. The State presented only the presentence investigation report as evidence. Defendant testified on his own behalf. He requested a sentence of probation and that probation be transferred to the State of Missouri for ease of reporting, as he was employed as an over-the-road truck driver and lived with his mother in St. Louis, Missouri. After considering the presentence investigation report, recommendations from counsel, defendant's testimony, defendant's statement in allocution, and the statutory factors in

aggravation and mitigation, the court sentenced defendant on count I, noting count II merged therewith, to 24 months' probation with a stayed sentence of 180 days in jail.

¶ 26 This appeal followed.

¶ 27 II. ANALYSIS

¶ 28 A. Sufficiency of the Evidence

¶ 29 Defendant claims the State failed to prove him guilty of domestic battery beyond a reasonable doubt. He claims Woods's testimony was "so plagued by vagaries and riddled with contradictions as to be wholly insufficient."

¶ 30 "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). It is not the reviewing court's role to retry the defendant; instead, we must ask whether, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact must "resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *People v. Gray*, 2017 IL 120958, ¶ 35. The trier of fact is best equipped to judge the credibility of witnesses, and due consideration must be given to the fact that it was the trial court and jury that saw and heard the witnesses. *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007). Accordingly, a jury's findings concerning credibility are entitled to great weight. *People v. Smith*, 185 Ill. 2d 532, 542 (1999).

¶ 31 A reviewing court will not replace the trier of fact's judgment with its own regarding the weight of the evidence or witnesses' credibility. *Gray*, 2017 IL 120958, ¶ 35. "A conviction may be based on circumstantial evidence ***." *People v. Huff*, 29 Ill. 2d 315, 320

(1963). A single witness's testimony, if positive and credible, is sufficient to support a conviction. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). "A conviction will not be reversed simply because the evidence is contradictory or because the defendant claims that a witness was not credible." *Gray*, 2017 IL 120958, ¶ 36. The trier of fact need not "search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt." *People v. Russell*, 17 Ill. 2d 328, 331 (1959).

¶ 32        "A person commits domestic battery if he or she knowingly without legal justification by any means: (1) [c]auses bodily harm to any family or household member; [or] (2) [m]akes physical contact of an insulting or provoking nature with any family or household member." 720 ILCS 5/12-3.2(a) (West 2016). A person acts knowingly regarding "[t]he nature or attendant circumstances of his or her conduct *** when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist." 720 ILCS 5/4-5(a) (West 2016). A person acts knowingly regarding "[t]he result of his or her conduct *** when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2016). "Knowledge may be inferred from the facts and circumstances of the case." *People v. Holt*, 271 Ill. App. 3d 1016, 1025 (1995).

¶ 33                                        1. *Bodily Harm*

¶ 34        Domestic battery by bodily harm has four elements: The State must prove defendant (1) intentionally or knowingly, (2) and without legal justification, (3) caused bodily harm, (4) to any family or household member. 720 ILCS 5/12-3.2(a)(1) (West 2016). Defendant does not dispute Woods was a "household member," but he denies the evidence demonstrated he caused the scratches on her neck and chest as depicted in the State's exhibits. He claims Woods's testimony was inconsistent and insufficient to support a guilty verdict. We disagree.

¶ 35 Woods testified she could tell defendant "was upset" when he entered the living room where she was sitting on the couch. After the cake incident, she said she "stood up" and defendant "was standing by [her]." The prosecutor asked Woods the following:

"Q. And did he make any other physical contact with you when you stood up?

A. He did. He pushed me to the wall and had his hand on my throat.

Q. And when you say he had his hand on your throat, was his hand grabbing your throat?

A. I'm sorry?

Q. Was his hand grabbing your throat?

A. Well, I mean, he had his hand on my throat. He had me against the wall.

Q. Was he holding you against the wall with his hand on your throat?

A. Just with his hand. Yes."

¶ 36 Based on this testimony, a reasonable jury could have found defendant caused the scratch marks on Woods's neck and chest when he "pushed [her] to the wall and had his hand on [her] throat." Woods's uncertainty about when or even if she sustained the scratches during this incident would not serve to destroy her credibility. The jury was satisfied with her testimony that defendant pushed her to the wall and held her with his hand around her neck. Under this described scenario, it was reasonable to infer the scratches depicted in the photos taken immediately following the incident were the result of defendant's conduct. Accordingly, it was reasonable for the jury to find defendant caused bodily harm to Woods beyond a reasonable doubt.

¶ 37 2. *Insulting or Provoking Contact*

¶ 38    Domestic battery by insulting or provoking contact has four elements: the State must prove "that the defendant (1) intentionally or knowingly, (2) without legal justification, (3) made physical contact of an insulting [or provoking] nature, (4) with a family or household member." *People v. Pickens*, 354 Ill. App. 3d 904, 914 (2004). Defendant claims that Woods "getting birthday cake on her did not rise to the level of insult or provocation as contemplated by the domestic battery statute." We disagree with defendant's statement, not only with his characterization of the incident but his conclusion as well.

¶ 39    The evidence that defendant's contact was of an insulting or provoking nature was overwhelming. Woods testified defendant was angry when he entered the living room as she sat on the couch eating a piece of cake. She could not hear what he was saying, but she "could tell he was upset." He walked over to her, took the plate of cake, and pushed it in her face. Woods said she "was furious."

¶ 40    Woods admitted there was no birthday party or celebration going on in the middle of the night when defendant shoved cake in her face. In fact, she testified defendant was visibly upset at the time of the incident. Defendant admitted to police and at trial that he and Woods had an argument that night. He also admitted he "put [the cake] in her face." But, he claimed it was during a birthday party earlier in the evening.

¶ 41    Whether defendant's contact with Woods was of an insulting or provoking nature was an issue of fact for the jury to decide. See *People v. Rachel*, 123 Ill. App. 3d 600, 608 (1984). Shoving cake in someone's face in anger is an unmistakable expression of contempt for that person. Thus, not only could the jury here reasonably conclude that defendant's contact with Woods was insulting or provoking, such a conclusion was obvious under the circumstances to which she testified.

¶ 42                    B. The *Zehr* Instructions to the Potential Jurors

¶ 43          Under Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), the trial court must admonish each potential juror on four constitutional principles that are essential to a fair trial. Also, the court must ask each potential juror if he or she understands and accepts those principles. These are known as the *Zehr* admonitions and inquiries, named after *People v. Zehr*, 103 Ill. 2d 472 (1984). In the present case, *Zehr* admonitions were given, and *Zehr* inquiries were made. On appeal, however, defendant asserts violations of Rule 431(b). Whether the trial court complied with the requirements of Rule 431(b) is subject to *de novo* review. *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 37.

¶ 44          Defendant acknowledges that, in the proceedings below, he never objected to any noncompliance with Rule 431(b) or asserted an objection in a posttrial motion. "[B]oth a trial objection and a written post-trial motion raising the issue are necessary to preserve an issue for review." *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Nevertheless, defendant seeks to avert the procedural forfeiture by invoking the doctrine of plain error. He relies on the first prong of the plain-error doctrine. He maintains that, because the evidence in the trial was "closely balanced," the "clear or obvious" violations of Rule 431(b) "threatened to tip the scales of justice against" him. (Internal quotation marks omitted.) *People v. Sebby*, 2017 IL 119445, ¶ 51. According to defendant, the trial court clearly or obviously violated Rule 431(b).

¶ 45          We begin our plain-error analysis by first determining whether any error occurred at all. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). Defendant claims the trial court erred by collapsing all four principles into one inquiry rather than reciting one principle at a time and asking the potential jurors if they understood and accepted that principle. If indeed this was an error, it was not a clear or obvious one. Nothing in the text of Rule 431(b) clearly requires delivering the

admonitions piecemeal with the inquiries interspersed. As defendant admits, the appellate court is divided on the question of whether it is necessary to do so. *Cf. People v. Willhite*, 399 Ill. App. 3d 1191, 1196-97 (2010) (this court observed that "Rule 431(b) has no requirement that the trial court ask separate questions of the jurors about each individual principle") and *People v. Hayes*, 409 Ill. App. 3d 612, 627 (2011) (holding that the trial court's admonishments were not compliant because it collapsed the first three principles). Consistent with *Willhite*, we conclude the trial court committed no error in reciting the Rule 431(b) principles to the venire and inquiring about its understanding and acceptance of those principles in compound form. "Contrary to defendant's assertions on appeal, our rationale in *Willhite* was not solely reliant on an earlier, vacated version of *McCovins*." *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 64 (citing *People v. McCovins*, 2011 IL App (1st) 081805-B). Because we have determined the trial court committed no error with respect to its Rule 431(b) questions, we need not consider defendant's contention under plain-error analysis.

¶ 46                                III. CONCLUSION

¶ 47          For the foregoing reasons, we affirm the trial court's judgment.

¶ 48          Affirmed.