FIRST DIVISION 

SEPTEMBER 30, 1998

No. 1-97-2112

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

MARTIN MACIAS,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

96 CR 7312

Honorable

Francis Golniewicz,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant appeals his conviction after a bench trial for possession of controlled substance with intent to deliver and unlawful use of a weapon by a felon.  Defendant raises four issues for review.  He contends that:  (1) he did not knowingly waive his right to a jury trial; (2) the State failed to prove him guilty beyond a reasonable doubt; (3) the trial court erred in denying his motion for a new trial; and (4) the defense attorney rendered ineffective assistance of counsel.  We reverse the decision of the trial court, finding that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt.

I.  FACTS

At trial, Chicago police officer Thomas Horton testified that on February 5, 1996, he saw the defendant enter the apartment building at 2104 South Washtenaw.  The multiple-unit building contained a security door leading to a common entry to front and rear apartments.  Minutes after defendant entered the apartment building, Officer Horton noticed that the lights went on in the rear first-floor apartment.  The next day, February 6, 1996, Officer Horton obtained a search warrant to search defendant and the rear first-floor apartment of 2104 South Washtenaw.  Defendant was then placed under surveillance.

Later that same day, Chicago police officer Ramirez stopped defendant next to his parked car at 2204 South California Avenue.  Officer Horton then came to defendant's parked car, where defendant and Officer Ramirez were located, and handed defendant a copy of the search warrant.  After the officers advised defendant of his 
Miranda
 rights in Spanish, they performed a pat-down search on defendant.  The officers recovered more than a dozen keys from defendant.

The officer next placed defendant in the squad car and drove to the 2104 South Washtenaw address.  With a key recovered from defendant, the officers opened the security door to the common entrance and entered the building.  The officers then went to the rear apartment on the first floor and found that there were two padlocks on the front door to the apartment.  Again, with two separate keys from the defendant, the officers opened each padlock.

The officers entered and secured the apartment.  Before searching the entire apartment, the officers noticed that a bedroom door next to the kitchen was locked with a padlock.  Using a fourth key from defendant's set of keys, the officers unlocked the bedroom door.  The officers then searched the bedroom and found, underneath a pile of clothes next to two dressers, 3½-kilograms of cocaine.  In addition, the police officers recovered from underneath the bed mattress, a scale, plastic bags and two guns.

During a search of the apartment, the officers found no evidence that defendant resided in the apartment.  The officers also did not find any fingerprints of defendant within the apartment.  Defendant was then arrested.  Some of the officers went to defendant's residence at 2540 St. Louis and obtained consent to search the residence from defendant's wife.  The officers did not find anything incriminating against defendant at his residence.

During defendant's case in chief, the parties stipulated that Mr. Apachecho owned the 2104 South Washtenaw building and that Commonwealth Edison supplied electrical service to the first floor rear apartment from February 13, 1995, to February 6, 1996.  The electric service was in the name of Rafael Meza.  In addition, the parties stipulated that Rafael Meza was hospitalized from January 31, 1996, to February 7, 1996, in the intensive care until of St. Anthony's hospital.  Meza's hospital bills indicated as his residence 2104 South Washtenaw, first floor, rear apartment.

The defendant then testified.  He stated that on February 6, 1996, officers approached him, placed him into custody and took the 10 or 12 keys in his possession from him.  The defendant stated that the police took keys to his house, his car and the 2104 South Washtenaw address.

Defendant also testified that, the Friday before his arrest, he went to visit his friend Rafael Meza at the 2104 South Washtenaw address.  Upon his arrival at the apartment, defendant discovered two friends of Meza's staying at the apartment.  They informed defendant that Meza was hospitalized and asked defendant to take a change of clothes to Meza at the hospital.

Defendant went to the hospital and visited Meza.  At the hospital, Meza gave defendant keys to Meza's apartment in case Meza would need additional clothing.  Defendant testified that he placed the keys on his key ring so that he would not lose them.  Defendant testified that he never used those keys to enter the apartment, that he had not visited the apartment the day before his arrest, and that he had no knowledge of guns or drugs in the bedroom of the apartment.

The trial court found defendant guilty of possession with intent to deliver and unlawful use of a weapon by a felon.  In its ruling, the trial court stated that defendant had keys not only to the apartment but to the padlock on the bedroom door, where the drugs and guns were found, and no evidence indicated that anyone else had a key to the bedroom padlock.  In addition, the trial court found that defendant's testimony was "incredible" and that defendant was not telling the truth about the keys.

Prior to sentencing, defendant filed a motion for a new trial and sought to prove that Officer Horton's testimony at trial was incorrect about the keys seized from defendant.  While at trial, Officer Horton stated that he obtained one single key ring from defendant.  Officer Horton changed his testimony at the hearing on defendant's motion for a new trial.  After examining the inventoried keys following trial, Officer Horton testified at the motion hearing that there were multiple key rings recovered from the defendant; four rings making one set and additional, unconnected key rings.

The trial court denied defendant's motion for a new trial.  The court found that the inventoried keys were not newly discovered evidence and that it was improper for the defendant to raise this issue in a posttrial motion.  The court also found that Officer Horton had not perjured himself at trial because some of the key rings were interconnected and contained one set of keys.  The trial court then sentenced defendant to a term of 15 years' imprisonment in the Illinois Department of Corrections and this appeal followed.

II.  ANALYSIS

We first address defendant's contention that the prosecution presented insufficient evidence at trial to prove defendant guilty of possession of a controlled substance with intent to deliver and unlawful use of weapons by a felon beyond a reasonable doubt.  Defendant asserts that the prosecution failed to prove, and the trial court improperly inferred, that defendant knew the narcotics and weapons were in the apartment and that defendant had constructive possession of both.

 When considering the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt.  
People v. Young
, 128 Ill. 2d 1, 49, 538 N.E.2d 461 (1989).  We will not reverse a conviction on grounds of insufficient evidence unless that evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt.  
People v. Furby
, 138 Ill. 2d 434, 455, 563 N.E.2d 421 (1990).

To sustain a charge of unlawful possession of a controlled substance, the State must prove knowledge of the possession of the substance and that the narcotics were in the immediate and exclusive control of defendant.  
People v. Frieberg
, 147 Ill. 2d 326, 360, 589 N.E.2d 508 (1992).  To sustain a conviction for unlawful use of weapons by a felon, the State must prove that defendant committed the crime of unlawful use of weapons and that defendant has a felony conviction.  See 720 ILCS 5/24-1.1(a) (West 1998); 
People v. Gonzalez
, 151 Ill. 2d 79, 87, 600 N.E.2d 1189 (1992).

For both charges, possession may be actual or constructive.  
People v. Morrison
, 178 Ill. App. 3d 76, 90, 532 N.E.2d 1077 (1988).  Constructive possession exists where there is no actual personal present dominion over the contraband, but defendant has an intent and a capability to maintain control and dominion over the contraband.  
Morrison
, 178 Ill. App. 3d at 90; 
People v. Valentin
, 135 Ill. App. 3d 22, 31, 480 N.E.2d 1351 (1985).  Constructive possession may be proved if the defendant controlled the premises where the contraband was found.  
People v. Chicos
, 205 Ill. App. 3d 928, 935, 563 N.E.2d 893 (1990).  Thus, for both charges, the State must show that defendant had knowledge of the narcotics and weapons and that he had immediate and exclusive control of the area where they were found.   

Here, we find that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt.  The State relies heavily on the testimony of Officer Horton and the keys recovered from defendant.  Specifically, when Officers Ramirez and Horton stopped defendant next to his car, they recovered more than 12 keys from him.  These keys opened the security door to the 2104 South Washtenaw building, the two padlocks on the front door to the apartment, and the padlock on the bedroom door next to the kitchen.  However, defendant explained at trial why he had the keys.  Defendant's testimony was not contradicted and was, in fact,  corroborated.  

At trial, defendant testified as follows: 

"Q. Who gave you those keys?

A. That Friday before the police took me to that 

apartment, I had gone to visit Mr. Rafael Meza at that apartment.

Q. And what happened when you got there?

A. Two friends who were there let me know that Mr. 

Rafael Meza was not there.

***

Q. Did you learn where he was?

A. Yes, because they let me know that he was St. 

Antonio Hospital. 

Q. Would that be St. Anthony's Hospital?

A. Yes.

***

Q. All right.  And where did you go when you left 2104 

Washtenaw at that time?

A. Mr. Rafael Meza had asked those men for some 

clothing.

Q. And what did you do?

A. Since those men were going to work, they asked me a 

favor and asked if I could possibly take the clothes to Mr. 

Rafael Meza to the hospital."

Defendant then testified that he took the clothes to the hospital for Mr. Meza.  Mr. Meza then gave the keys to the apartment to defendant.  Defendant testified that, "Mr. Rafael Meza gave me those keys because he wasn't sure if and when he was going to get out later on that afternoon, and in case he needed some type of clothing, if he needed some, he would give me a call."   

The State argued that the fact that the keys were on a single ring demonstrates defendant's guilt via constructive possession.  Our review of the record indicates that it is not clear that defendant was carrying the keys on a single ring.  Defendant testified at trial that he put Mr. Meza's keys together with his keys.  Officer Horton testified at trial that he "believe[d] it was one ring" rather than two separate keys rings joined together.  The trial court did not have the opportunity to view the keys until a hearing on defendant's posttrial motion.  At the May 6, 1997, hearing, after viewing the inventoried keys, Officer Horton testified that he thought there were four intersecting rings making one set with two additional rings, contrary to his trial testimony that "he believe[d]it was one ring."  

Defendant testified that he had never used the keys to get into the apartment, that he had never been in the bedroom where the drugs and guns were discovered and that he had no knowledge that the contraband was there.  Defendant testified that he resided at 2540 South St. Louis and that he did not own anything in the 2104 South Washtenaw apartment.

The parties stipulated at trial that Mr. Apachecho owned the multi-unit apartment building at 2104 South Washtenaw.  The parties further stipulated that Mr. Rafael Meza was in the intensive care unit at St. Anthony Hospital in Chicago from January 31, 1996, to February 7, 1996.  Thus, the record indicates that Mr. Rafael Meza was indeed hospitalized on the date defendant visited Mr. Meza's apartment.  Mr. Meza's hospital bills reflect that he resides at the 2104 South Washtenaw apartment.  The parties also stipulated that the record keeper for Commonwealth Edison would testify that the electrical service for the apartment at the time of the incident was in the name of Rafael Meza.  These facts corroborate defendant's testimony.  Further, the State offered no other evidence contradicting these facts.  The record does not indicate that the officers recovered any bills at the 2104 South Washtenaw apartment that were in defendant's name or retrieved any other indicia of ownership related to the defendant.  The State did not offer any fingerprint evidence linking defendant to the premises or to the contraband. 

As evidence that defendant had immediate and exclusive control over the apartment, the State points to Officer Horton's testimony that the night before the search warrant was executed, he personally observed defendant enter the apartment building and, a minute or two later, saw the light turn on in the first-floor rear apartment.  In addressing this argument, we first clarify some confusion in the court below concerning Officer Horton's testimony.   In the trial court's ruling, the court relied on the fact that the police saw defendant enter the apartment and, a minute or so later, saw a light go on in the rear bedroom.  Our review of the record indicates that this was not Officer Horton's testimony.  On direct examination, Officer Horton was asked what happened on February 5, 1996, when the officer saw defendant at the 2104 South Washtenaw address.  Officer Horton then testified as follows:

"A. I observed [defendant] pull up in the front, in his 

vehicle, exit and go in the door, the side entrance door.

Q. And did you see anything else happen after the Defendant entered the building?

A. Yes, shortly after he entered the building, the 

lights in the rear apartment went on."

Thus, Officer Horton testified that he saw defendant enter the 
building
 and the lights go on in the rear 
apartment
, rather than seeing defendant enter the 
apartment
 and the lights go on in the rear 
bedroom
.  Indeed, no evidence was presented that Officer Horton ever saw defendant in the bedroom where the narcotics were recovered or ever saw defendant in the apartment where the bedroom was located.   

In addition, this is not a situation where knowledge and awareness can be inferred because the contraband was in plain view to the defendant.  See 
People v. Rhoades
, 74 Ill. App. 3d 247, 252, 392 N.E.2d 923 (1979)(contraband sitting on defendant's lap); 
People v. Janis
, 56 Ill. App. 3d 160, 164, 371 N.E.2d 1063 (1977)(200 pounds of burglary tools in back of van were easily visible to defendant).  To the contrary, the narcotics were hidden under clothes and the weapons were under the mattress in the rear bedroom.  As such, we cannot infer that defendant knew of the presence of the guns or narcotics because they were in plain view.

Similarly, a defendant may have control over and access to an area, but this does not necessarily mean that the defendant has knowledge of the contraband in that area.  See 
People v. Jones
, 105 Ill. App. 3d 1143, 435 N.E.2d 823 (1982).

In 
Jones
, the defendant denied living at the apartment where the heroin was found, although a police officer testified that defendant told him he had been living at the apartment for two weeks.  
Jones
, 105 Ill. App. 3d at 1148.  Defendant's reason for being at the apartment was not refuted and was, in fact, supported by defense witness testimony.  
Jones
, 105 Ill. App. 3d at 1149.  Also, the apartment was accessible to other persons.  The court in 
Jones
 found the evidence was insufficient to establish defendant's guilt of possession of the heroin beyond a reasonable doubt because these facts "cast doubt on the control over the premises exerted by defendant."  
Jones
, 105 Ill. App. 3d at 1149. 

Similarly, in 
People v. Wolski
, 27 Ill. App. 3d 526, 528-29, 327 N.E.2d 308 (1975), defendant's conviction for possession of marijuana was reversed where there was no corroborating evidence presented other than the fact that the drugs were found in the apartment defendant shared with his brother to which others also had access.  Here, as in 
Wolski
, there was no corroborating evidence offered to link defendant with the narcotics and weapons other than the testimony of Officer Horton.  No utility bills in defendant's name were discovered in the apartment, no fingerprint evidence was offered, and the record indicates that others had access to the apartment.  The prosecution has the burden to prove that defendant was responsible for the presence of the narcotics.  
People v. Bolden
, 96 Ill. App. 2d 129, 237 N.E.2d 748 (1968).  We find that these facts, combined with defendant's testimony which was corroborated, cast doubt on defendant's knowledge of the possession of the contraband and cast doubt on defendant's immediate and exclusive control of the contraband.

The fact finder's determination of a defendant's guilt or innocence is entitled to great deference, and we will not retry the defendant when the sufficiency of the evidence is challenged.  
People v. W.T.
, 255 Ill. App. 3d 335, 348, 626 N.E.2d 747 (1994).  Nonetheless, as our supreme court stated in 
People v. Boclair
, "it is our duty to set aside a conviction when the evidence raises a reasonable doubt of defendant's guilt."  
People v. Boclair
, 129 Ill. 2d 458, 474, 544 N.E.2d 715 (1989).  Such is the case here.

In light of all of the forgoing, we reverse outright, finding that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt.  The prosecution here has failed to prove its case.  As such, our finding precludes retrial under the double jeopardy clause and calls for a judgment of acquittal.  See 
In re R.F.,
 298 Ill. App. 3d --- (1998).  

Because of our holding, we need not address defendant's other contentions.  

Reversed.

BUCKLEY and GALLAGHER, JJ., concur.