NO. 4-09-0158        Filed 5/13/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| FABIAN A. WILLHITE, | ) | No. 08CF976 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

_____

JUSTICE POPE delivered the opinion of the court:

In May 2008, the State charged defendant, Fabian A.

Willhite, with one count each of possession with intent to

deliver 1 gram or more but less than 15 grams of any substance

containing cocaine (720 ILCS 570/401(c)(2) (West 2008)) and

possession with intent to deliver more than 10 grams but not more

than 30 grams of cannabis (720 ILCS 550/5(c) (West 2008)).

Following an October 2008 trial, a jury convicted defendant on

the possession-with-intent-to-deliver-cannabis charge but acquit-

ted him as to the possession-with-intent-to-deliver-cocaine

charge.  The trial court sentenced defendant to 3 years' impris-

onment; awarded him 210 days' presentence credit and $1,050

credit toward any fines imposed; and assessed him a $10 drug-

court fee and a $100 trauma-fund fine.

Defendant appeals, arguing (1) the trial court failed

to conduct voir dire appropriately pursuant to Supreme Court Rule

431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007) by (a) asking about the four principles in compound form, (b) asking for group answers in response, and (c) refraining from asking Zehr-related questions until after the individual questioning was over and both parties had selected jurors and (2) he is entitled to $110 credit toward his drug-court and trauma-fund assessments. We affirm as modified and remand with directions.

## I. BACKGROUND

In May 2008, defendant was a passenger in a van parked in a restricted parking lot located in an area known for drug and gang activities. Because the parking lot had a strict anti-loitering policy, police approached the van and spoke with its driver and defendant. When asked to produce identification, the driver opened her bag, and one of the officers detected the scent of cannabis. The officer searched the bag and found 7 Baggies containing marijuana, 3 razor blades, $145 in United States currency, and 16 empty Baggies. Next, the officers searched the van, recovering three cellular phones, $850 in United States currency, and defendant's wallet. Defendant consented to a search of his person, during which police found three additional cellular phones, $190 in United States currency, and a pocketknife. The officers arrested the driver and defendant. After a subsequent, consensual search of the driver's apartment,

police further discovered more cellular phones; a small, digital scale; a Baggie containing a chunk of cocaine; and an eyeglasses case also containing cocaine. Defendant told police the driver was his girlfriend and that he had been staying in her apartment for the last nine months. When one officer informed him he found drugs on defendant's girlfriend, defendant told him the drugs belonged to him, he sold drugs regularly, and he was planning on selling marijuana in the parking lot.

The State charged defendant with one count each of possession with intent to deliver 1 gram or more but less than 15 grams of any substance containing cocaine (720 ILCS 570/401(c)(2) (West 2008)) and possession with intent to deliver more than 10 grams but not more than 30 grams of cannabis (720 ILCS 550/5(c) (West 2008)). Defendant pleaded not guilty to both charges, and the case was tried to a jury.

At the start of voir dire, the trial court addressed the entire venire, stating as follows:

"I want to go over some of the instructions
with you now this afternoon so that you can
keep them in perspective as you listen to the
testimony.

The first instruction is that [defen-
dant] is presumed to be innocent of the
charges against him. This presumption re-

- 3 -

mains with [defendant] throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless, from all *** of the evidence in this case, you are convinced beyond a reasonable doubt he is guilty.

The State has the burden of proving the guilt of [defendant] beyond a reasonable doubt[,] and this burden remains on the State throughout the case. [Defendant] is not required to prove his innocence.

In connection with that last sentence, this [d]efendant, as does every citizen, possesses an absolute right not to testify at his trial if he so choose[s]. If [defendant] chooses not to testify, you'll receive an instruction that states the fact that [defendant] did not testify must not be considered by you in any way in arriving at your verdict.

You will also receive *** a written instruction[] that defines your role in judging the believability of the witnesses. This instruction states that only you are the

- 4 -

judges of the believability of the witnesses and of the weight to be given to the testimony of each ***.

In considering the testimony of any witness, you may take into account his ability and opportunity to observe[;] his memory[;] his manner while testifying[;] any interest, bias[,] or prejudice he may have[;] and the reasonableness of his testimony considered in the light of all the evidence in the case. And you should judge the testimony of [defendant] in the same manner as you judge the testimony of any other witness."

After further individual questioning of the venire by the court about their families, whether they knew any of the parties involved in defendant's case, and whether they could be fair and impartial, the court addressed the first venire panel, consisting of four potential jurors, stating as follows:

"THE COURT: I want to go over again some of the instructions that we started this afternoon.

The four of you understand that *** defendant is presumed to be innocent of the charges against him; that before *** defen-

dant can be convicted the State must prove him guilty beyond a reasonable doubt; that *** defendant is not required to offer any evidence on his behalf; and that if defendant chooses not to testify his failure to testify cannot be held against him in any way. The four of you understand those instructions; is that correct?

THE JURORS: (Collectively) [Y]es.

THE COURT: And they answer in the affirmative.

And the four of you will follow those instructions; is that correct?

THE JURORS: (Collectively) [Y]es.

THE COURT: And again they answer in the affirmative."

The court swore in all four members of the first panel as jurors. The court proceeded to individually question members of the second venire panel, consisting of four potential jurors, and the third panel, consisting of six potential jurors. Following individual questioning, the court repeated the above instructions and asked each panel collectively if they understood and accepted the instructions. Each panel collectively answered "yes." The court swore in all the members of the second panel as jurors,

- 6 -

four members of the third panel as jurors, and two members of the third panel as alternate jurors.

## II. ANALYSIS

## A. Voir Dire

Defendant argues the trial court erred by failing to comply with the mandates of Supreme Court Rule 431(b).  Since we are construing a supreme court rule, our standard of review is de novo.  People v. Suarez, 224 Ill. 2d 37, 41-42, 862 N.E.2d 977, 979 (2007).  Specifically, defendant contends the court violated Rule 431(b) by failing to ask jurors individually as to whether they understood and accepted each principle set forth by the supreme court in People v. Zehr, 103 Ill. 2d 472, 477-78, 469 N.E.2d 1062, 1064 (1984).  Defendant also contends the court was required to ask a separate question as to each principle, rather than "leading, compound questions."  Defendant concedes he failed to preserve this issue for review but maintains the issue may be addressed by this court as it constitutes plain error.

Under the plain-error doctrine, a reviewing court may consider an unpreserved and otherwise forfeited error when (1) "the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence[] or (2) where the error is so serious that the defendant was denied a substantial right[] and thus a fair trial." People v. McLaurin, 235 Ill. 2d 478, 489, 922 N.E.2d 344, 351

(2009).  However, before we consider application of the plain-error doctrine to the case at bar, we must determine whether the trial court erred in its application of Rule 431(b).

In Zehr, the Supreme Court of Illinois held a trial court erred during voir dire by refusing to ensure jurors understood the following four principles:  (1) the defendant is presumed innocent, (2) the State must prove the defendant's guilt beyond a reasonable doubt, (3) the defendant need not present evidence on his own behalf, and (4) the defendant's decision not to testify must not be held against him.  Zehr, 103 Ill. 2d at 477-78, 469 N.E.2d at 1064.

Prior to 2007, Rule 431(b) required defendants to request the trial court to question jurors regarding their understanding of the Zehr principles.  See 177 Ill. 2d R. 431(b). In 2007, the supreme court amended Rule 431(b), "plac[ing] an affirmative sua sponte duty on the trial courts to ask potential jurors in each and every case whether they understand and accept the Zehr principles."  People v. Graham, 393 Ill. App. 3d 268, 273, 913 N.E.2d 99, 103 (2009); see also Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. Following amendment, Rule 431(b) now states as follows:

> "The court shall ask each potential
> juror, individually or in a group, whether
> that juror understands and accepts the fol-

lowing principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." (Emphases added.) Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

Pursuant to the above language, a trial court must (1) sua sponte question each potential juror as to whether he understands and accepts the Zehr principles (2) in a manner that allows each juror an opportunity to respond.

In the case at bar, defendant argues the trial court

- 9 -

failed to allow each individual venireperson an opportunity to respond to the <u>Zehr</u> principles. Although the court twice recited the <u>Zehr</u> principles to the jury, defendant alleges "on neither occasion were jurors asked to reply individually as to whether they understood and accepted those propositions." Defendant contends the rule does not anticipate group responses to <u>Zehr</u> questioning.

At the start of <u>voir</u> <u>dire</u>, the trial court recited the four <u>Zehr</u> principles to the entire venire. Immediately follow-ing, the court did not ask the jurors if they understood or accepted those principles. Had the court ended its inquiry there, error would have occurred. For example, in <u>People v. Yusuf</u>, No. 4-08-0034, slip op. at 9 (April 13, 2010), ___ Ill. App. 3d ___, ___, ___ N.E.2d ___, ___, this court found the trial court erred--despite reciting the <u>Zehr</u> principles at the begin-ning of <u>voir</u> <u>dire</u> to the venire <u>en</u> <u>masse</u>--by failing to directly question the jurors as to whether they understood those princi-ples, <u>i.e.</u>, the second paragraph of Rule 431(b). The same was true in our decision in <u>People v. Owens</u>, 394 Ill. App. 3d 147, 914 N.E.2d 1280 (2009). However, <u>Yusuf</u> and <u>Owens</u> are distin-guishable from the case at bar.

Here, the trial court questioned the jurors a second time regarding their understanding <u>and</u> <u>acceptance</u> of the four specific <u>Zehr</u> principles. After dividing the potential jurors

- 10 -

into panels, the court asked each panel the following:

> "The four of you understand that *** defendant is presumed to be innocent of the charges against him; that before *** defendant can be convicted the State must prove him guilty beyond a reasonable doubt; that *** defendant is not required to offer any evidence on his behalf; and that if defendant chooses not to testify his failure to testify cannot be held against him in any way. The four of you understand those instructions; is that correct?"

Each group answered affirmatively. The court then asked each panel, "And the four of you will follow those instructions; is that correct?" Again, each group answered affirmatively. Defendant contends this did not constitute individual questioning of each juror pursuant to Rule 431(b). Specifically, defendant argues the court erred by (1) asking about the four principles in compound form, (2) asking for group answers in response, and (3) refraining from asking Zehr-related questions until after the individual questioning by the attorneys was completed and both parties had agreed upon the jurors. However, we find the plain language of the rule does not require the trial court to ask jurors individually about each principle, receive their answers

- 11 -

one by one, or ask all venirepersons--rather than only those selected by the parties--if they understand and accept the Zehr principles.

The 1997 committee comments to Rule 431(b) noted the rule sought "to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law."  177 Ill. 2d R. 431(b), Committee Comments, at lxxix.  However, to achieve this purpose, "[t]he court shall ask each potential juror, individually or in a group, whether that juror understands and accepts" the four Rule 431(b) principles.  (Emphasis added.) Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.  Rule 431(b) has no requirement that the trial court ask separate questions of the jurors about each individual principle.  People v. McCovins, No. 1-08-1805, slip op. at 6 (March 4, 2010), ___ Ill. App. 3d ___, ___, ___ N.E.2d ___, ___ (First District).  Nor does the rule require separate, individual answers from each juror.  The jurors in this case were placed into small groups and collectively answered that they understood and accepted the principles set forth by the court.  Nothing in the record indicates the trial judge acted in a manner that would discourage a venireperson from responding if he or she did not understand or agree with any of the Zehr principles.  Moreover, Rule 431(b) does not state a specific time when the court must

question venirepersons individually or in groups.  Here, the timing of the court's questioning had no bearing on the jurors' opportunity to respond as to whether they accepted and understood the four Zehr principles.  The prospective jurors had not yet been sworn to serve in the case.  If at the point of the Zehr questioning a potential juror had indicated a problem accepting any of the Zehr principles, the court would have been able to inquire further and remove any biased juror, if necessary.  Thus, we reject defendant's contentions the court failed to comply with Rule 431(b).

Because we find the trial court committed no error in reciting the four Zehr principles to the venire and inquiring about their understanding and acceptance of those principles in small groups, we need not consider defendant's contention under plain-error analysis.

### B. Fine Credit

Defendant also contends he is entitled to an additional $110 credit against his $10 drug-court and $100 trauma-fund fines.  The State concedes this issue.

Section 110-14(a) of the Code of Criminal Procedure of 1963 provides as follows:

> "Any person incarcerated on a bailable
> offense who does not supply bail and against
> whom a fine is levied on conviction of such

offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant."  725 ILCS 5/110-14(a) (West 2008).

Credit under section 110-14(a) applies to the $100 trauma-fund fine set forth in section 5-9-1.1(b) of the Unified Code of Corrections (730 ILCS 5/5-9-1.1(b) (West 2008)).  People v. Chambers, 391 Ill. App. 3d 467, 469, 909 N.E.2d 351, 353 (2009). Section 110-14(a) credit also applies to the $10 drug-court fee set forth in section 5-1101(d-5) of the Counties Code (55 ILCS 5/5-1101(d-5) (West 2008)) as long as the defendant is not tried in drug court.  People v. Sulton, 395 Ill. App. 3d 186, 193, 916 N.E.2d 642, 647-48 (2009).

Here, defendant spent 210 days in presentence custody and accumulated $1,050 in potential credit against any fines imposed against him but received no credit against his trauma-fund and drug-court fines.  Five hundred dollars' credit was applied to a mandatory assessment under section 411.2(a)(4) of the Illinois Controlled Substances Act (720 ILCS 570/411.2(a)(4) (West 2008)), leaving $550 to apply against any remaining fines. We affirm as modified and remand to the trial court to issue an amended sentencing judgment giving defendant credit for his $100 trauma-fund fine.  We also credit defendant $10 against his drug-court assessment, since defendant received imprisonment rather

- 14 -

than a community-based sentence.  See 730 ILCS 166/20(a), 30 (West 2008) (drug-court participation occurs only after approval of the prosecutor and entails community-based treatment).

### III. CONCLUSION

For the reasons stated, we affirm as modified and remand this cause to the trial court for issuance of an amended sentencing judgment to reflect application of defendant's monetary credit to the $100 trauma-fund fine and the $10 drug-court assessment.  We award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed as modified and cause remanded with directions.

TURNER and APPLETON, JJ., concur.