NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180247-U

NO. 4-18-0247

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 10, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| ANDREW C. BELL, | ) | No. 16CF602 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1   *Held*:   (1) The State proved defendant's guilt beyond a reasonable doubt.

(2) The trial court complied with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) when questioning potential jurors during *voir dire*.

(3) Defendant failed to establish that the 22-year prison sentence imposed by the trial court was excessive and an abuse of the court's sentencing discretion.

¶ 2   Following a jury trial, defendant, Andrew C. Bell, was convicted of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2014)) and unlawful possession of a weapon by a felon on mandatory supervised release (MSR) (*id.* § 24-1.1(a)), and the trial court sentenced him to 22 years in prison. Defendant appeals, arguing (1) the State failed to prove his guilt beyond a reasonable doubt because it did not establish his constructive possession of a weapon, (2) the court failed to properly question potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff.

July 1, 2012), and (3) the sentence imposed by the court was excessive. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            In April 2016, the State charged defendant with two counts of unlawful possession with intent to deliver a controlled substance (720 ILCS 570/401(c)(1), (2) (West 2014)) (counts I and II), being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2014)) (count III), and unlawful possession of a weapon by a felon on MSR (*id.* § 24-1.1(a)) (count IV). Before trial, the trial court dismissed counts I and II, the two drug-related charges, on the State's motion and the matter proceeded on only counts III and IV. Those charges were based on allegations that defendant knowingly possessed a handgun after having been previously convicted of the felony offenses of unlawful possession of a weapon by a felon and burglary, and while serving a term of MSR.

¶ 5            In January 2018, defendant's jury trial was conducted. During *voir dire*, the trial court informed all potential jurors, in groups of four or less, of the basic principles of law applicable to criminal prosecutions, reciting those "important principles of law" in substantially the same manner each time:

> "The Defendant is presumed to be innocent of the charges against him. Before a defendant can be convicted, the State must prove him guilty beyond a reasonable doubt. The Defendant is not required to offer any evidence on his own behalf; and if the Defendant does not testify, it cannot be held against him."

After every recitation of the four principles, the court individually asked each juror "do you understand and accept each of those principles." Every juror confirmed his or her understanding and acceptance of the principles.

- 2 -

¶ 6        At trial, the parties stipulated that defendant had previously been convicted of two qualifying felony offenses under the armed-habitual-criminal statute. The State then presented evidence that on April 28, 2016, police officers executed a search warrant at 303 Country Fair Drive, apartment number 65, in Champaign, Illinois. Prior to the search, officers observed defendant arriving on the scene in a silver car and stopped him as he exited the vehicle. During the search of the residence, the police found "a Glock model 23 .40 caliber handgun" on top of the kitchen cabinets, along with an "extended magazine" and .40 caliber ammunition. The handgun and magazine were "swabbed" for deoxyribonucleic acid (DNA). Forensic testing showed a "mixture" of DNA profiles on both the handgun and its magazine with "a major male profile" or "contributor" that matched defendant's DNA profile.

¶ 7        The State further presented the testimony of Judy Oakley, a parole agent with the Illinois Department of Corrections (DOC). Oakley testified her duties included supervising individuals on MSR. In April 2016, Oakely was supervising defendant, who was then serving an MSR term. According to Oakley, on April 28, 2016, defendant was "paroled to" 303 Country Fair Drive, apartment number 65, in Champaign. She testified he had been paroled to that address since November 2, 2015. On cross-examination, Oakley acknowledged that the parolees she supervised could report that "they live someplace and they don't live there." However, on redirect, she stated it would be a parole violation to provide incorrect address information.

¶ 8        Defendant testified on his own behalf, stating that in April 2016, he resided at 1118 South Northwood Drive and not the Country Fair Drive address where the search warrant was executed. He submitted a copy of his driver's license, issued on January 5, 2016, and which listed his address as 1118 South Northwood Drive.

¶ 9 Defendant further asserted that the Country Fair Drive apartment belonged to his girlfriend. He testified he did not live in the apartment but did stay there occasionally. Defendant further denied receiving mail at the apartment and stated the only clothing of his in the apartment was one jacket. Defendant also testified that he had been driving his girlfriend's car on the day of the search warrant. He stated the police gained entrance to the apartment by taking the keys out of the ignition of his girlfriend's car and using one of the keys to unlock the apartment door.

¶ 10 Ultimately, the jury found defendant guilty of both being an armed habitual criminal and unlawful possession of a weapon by a felon. Defendant did not file a posttrial motion.

¶ 11 In February 2018, the trial court conducted defendant's sentencing hearing. The court first stated it had considered defendant's presentence investigation (PSI) report, which showed defendant was born in July 1994 and, thus, was 21 years old in April 2016, the date of the charged offenses. His criminal history included a juvenile adjudication for mob action for which he was sentenced to 24 months' probation. As an adult, defendant had a felony conviction for burglary in 2012 and a felony conviction for unlawful possession of a weapon by a felon in 2014. For the burglary offense, defendant was sentenced to 24 months' probation. He violated his probation, and in October 2012, it was revoked. Defendant was then resentenced to probation, but that probationary term was also subject to a petition to revoke and, ultimately terminated unsuccessfully. In connection with his 2014 conviction for unlawful possession of a weapon by a felon, defendant was sentenced to three years in DOC. Defendant also had two pending felony drug charges for unlawful possession with intent to deliver a controlled substance, on which he was arraigned in November 2016.

¶ 12 The PSI report further showed that defendant reported having a close relationship

with his mother and that he had a 10-month-old son who was born while he was incarcerated. As to education, defendant reported he was expelled from high school during his junior year for lack of attendance. Although he had completed the "Lincoln's Challenge program," he had not obtained either his high school diploma or general equivalency degree. Defendant had also never been employed. The report additionally showed defendant denied having any affiliation with a street gang but acknowledged having problems with both alcohol and drugs. He reported daily use of both cannabis and cocaine and stated he had never participated in a substance-abuse treatment program. Finally, when asked what "the major problem in his life" was, defendant replied his "education and [his] alcohol and drug abuse." To address those problems, he asserted he was "willing to go to school and take drug treatment classes."

¶ 13          At sentencing, the State additionally presented evidence in aggravation from three witnesses. Marshall Henry, a police officer with the City of Champaign and member of its street crimes task force (task force), testified he was familiar with defendant, who was being investigated by the task force for selling narcotics. Henry stated he "had information" that defendant was distributing narcotics from a silver Hyundai with a Texas registration. He also learned from informants and his own observations that defendant's "method" of selling drugs involved the use of a rental vehicle. Additionally, defendant would typically have another individual with him who did not have a lengthy criminal history so that "if anything were to happen[,] that individual would *** take the charge of whatever was found inside the vehicle."

¶ 14          On November 1, 2016, the silver Hyundai was observed by the police and a traffic stop was executed by the task force. An individual named Marshawn Williams was the driver of the vehicle, and defendant was the passenger. Upon approaching the vehicle, Henry observed two

- 5 -

bags of what appeared to be controlled substances on the floorboard next to the driver. One bag contained 10.3 grams of a substance that field tested positive for heroin and was individually packaged within 36 smaller bags. The second bag contained 5.5 grams of a substance that field tested positive for cocaine and was individually packaged within 18 smaller bags. Both defendant and Williams were arrested. According to Henry, defendant was found in possession of $2000 but was not employed at that time.

¶ 15        Henry testified he was also involved in the investigation that led to the issuance of the April 2016 search warrant for the Country Fair Drive apartment. He described that location as a multi-unit apartment complex with many families and children living in the area. Henry testified that prior to the search warrant "several controlled purchases of heroin" were made from defendant. Additionally, defendant had been "paroled" to the Country Fair Drive address and, before the search warrant was executed, admitted to Henry that "he had been living [at that location] for a couple of months," along with his girlfriend, Tia McLemore, and McLemore's brother. Although defendant was arrested following the execution of the search warrant, he was out on bond at the time of the November 2016 traffic stop.

¶ 16        Cully Schweska testified he was also a police officer for the City of Champaign and member of the task force. He participated in the execution of the April 2016 search warrant at the Country Fair Drive address and found items of evidentiary value, including sandwich bags, a digital scale, a bag of cocaine, a bag of heroin, and a bag that contained five individually wrapped bags of heroin. The total weight of the cocaine in the apartment was 9.4 grams and the total weight of the heroin was 8.8 grams. Schweska testified heroin residue was also found on the scale.

¶ 17        Finally, the State presented the testimony of Jenna Good, a lieutenant for the

Corrections Division of the Champaign County Sheriff's Office. Good's duties included reviewing and supervising the discipline reports for jail inmates. She testified she was familiar with defendant and stated he had 13 discipline or incident reports while incarcerated in the Champaign County Jail, not including one that was "pending" from the previous weekend. Good specifically testified that during an incident in January 2017, defendant was captured on video striking another inmate. In July 2017, he was captured on video in a physical altercation with a fellow inmate. The inmate involved in the second incident received stitches because of injuries he sustained during the altercation.

¶ 18 In mitigation, defendant presented the testimony of his mother, Anglee Turner. Turner described defendant as "really a nice person" who visited her to check on her health. She stated that defendant was bullied and only fought back if someone was physical with him. She believed defendant could turn his life around if given another chance to be with his family and that defendant's son could change defendant's life. Turner testified defendant wanted to "get out and be a father."

¶ 19 Finally, defendant submitted a letter from McLemore, his child's mother. In the letter, McLemore asked the trial court to consider "a lesser sentence" for defendant. She noted that defendant's son had "health conditions," including a cleft lip and palate, and was "facing multiple surgeries throughout his life." She believed defendant loved his son and was "hurt" when he was not present for his son's surgeries. McLemore further asserted that defendant was not a violent person and was, instead, "very helpful, loving, caring, and responsible."

¶ 20 The trial court noted defendant's two convictions merged and he would be sentenced only for the more serious armed-habitual-criminal offense. As to that offense, the State

recommended a sentence of 27 years in prison, while defendant's counsel asked the court to consider a 6-year prison sentence. Defendant offered a statement in allocution, asking the trial court to consider that he "wasn't out in public with the gun, and it wasn't immediately accessible." He also apologized for any "inconvenience."

¶ 21　　　　Ultimately, the trial court imposed a sentence of 22 years in prison. It found defendant's youth was a mitigating factor but noted he also had "a significant history of involvement with the criminal justice system." The court found it "significant" that defendant's prior community-based sentences were "marred by either failures and/or new offenses." Although the court considered McLemore's letter, it determined defendant was "not a factor in [his] child's life," noting no evidence of financial support for the child and that defendant was "not a responsible paternal figure." The trial court further considered the nature and the circumstances of the offense, emphasizing that the firearm was found with an extended magazine and loaded. It found that deterrence was a compelling factor in the case and further commented on evidence showing that "an extensive amount" of heroin and cocaine was found in the apartment with the firearm, as well as the circumstances of the November 2016 traffic stop.

¶ 22　　　　In March 2018, defendant filed a motion to reconsider his sentence in light of (1) his youth, noting he was "a young man" and 23 years old at the time of sentencing and (2) a lack of evidence "that the gun *** was used by him in any criminal activity, other than the mere possession of said gun." That same month, the trial court conducted a hearing and denied defendant's motion.

¶ 23　　　　This appeal followed.

¶ 24　　　　　　　　　　　　II. ANALYSIS

¶ 25　　　　　　　　　　　A. Sufficiency of the Evidence

¶ 26        On appeal, defendant first argues the State failed to prove him guilty of the charged offenses beyond a reasonable doubt because it failed to establish his constructive possession of the gun found in the Country Fair Drive apartment. He asserts the State's evidence was insufficient to show either that he had "power over the gun" or the intent to exercise control over it. Defendant maintains the State's DNA evidence did not establish when he had handled the gun and there was otherwise a lack of evidence connecting him to the apartment in which the gun was found, such as mail addressed to him or clothing. Additionally, he points to his own testimony that he did not live in the Country Fair Drive apartment and evidence he presented that his driver's license listed a different residential address.

¶ 27        "The State has the burden of proving beyond a reasonable doubt each element of an offense." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876. "When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the required elements beyond a reasonable doubt." *People v. Newton*, 2018 IL 122958, ¶ 24, 120 N.E.3d 948. "All reasonable inferences from the evidence must be drawn in favor of the prosecution." *People v. Hardman*, 2017 IL 121453, ¶ 37, 104 N.E.3d 372. Further, on review, it is not this court's role to retry the defendant, and "[a] conviction will not be reversed simply because the evidence is contradictory or because the defendant claims that a witness was not credible." *Gray*, 2017 IL 120958, ¶¶ 35-36. Instead, the evidence must be "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.* ¶ 35.

¶ 28        Here, defendant was convicted of two offenses—being an armed habitual criminal and unlawful possession of a weapon by a felon on MSR. "A person commits the offense of being

an armed habitual criminal if he or she *** possesses *** any firearm after having been convicted" of two or more qualifying offenses. 720 ILCS 5/24-1.7(a) (West 2014). Additionally, a defendant commits the offense of unlawful possession of a weapon by a felon when he "knowingly possess[es] *** any firearm or any firearm ammunition" after having "been convicted of a felony under the laws of this State or any other jurisdiction." *Id.* § 24-1.1(a). Violation of the unlawful-possession-of-a-weapon-by-a-felon statute by a person on MSR is a Class 2 felony. *Id.* § 24-1.1(e).

¶ 29　　　　　　On appeal, defendant does not argue that the State's evidence was insufficient to establish that he had the requisite criminal history to support both charged offenses, or that he was on MSR at the time the offenses were alleged to have occurred. Instead, as stated, he argues the State failed to establish his possession of the handgun found by the police in the Country Fair Drive apartment.

¶ 30　　　　　　Possession of a firearm may be actual or constructive. *People v. Brown*, 327 Ill. App. 3d 816, 824, 764 N.E.2d 562, 570 (2002). The State may establish constructive possession by showing the defendant (1) had knowledge of the presence of the weapon and (2) "exercised immediate and exclusive control over the area where the weapon was found." *Id.* Knowledge of the existence of a firearm may be inferred from circumstantial evidence. *Id.* at 824-25. Further, "[c]ontrol may be shown by evidence that defendant had the intent and capability to maintain control and dominion over the handgun, even if he lacked personal present dominion over it." *People v. Anderson*, 2018 IL App (4th) 160037, ¶ 32, 102 N.E.3d 260. Evidence "that the defendant had control over the premises where the contraband was found" creates "an inference that the defendant had constructive possession over the contraband." *People v. Hester*, 271 Ill. App. 3d 954, 961, 649 N.E.2d 1351, 1358 (1995)

- 10 -

¶ 31 Here, we disagree with defendant's argument and find, when viewed in the light most favorable to the State, the evidence presented was sufficient to demonstrate his constructive possession of the handgun found in the Country Fair Drive apartment. Evidence presented at trial showed the apartment was identified as defendant's residence for purposes of his MSR. At the time the search warrant was issued, defendant was still serving his MSR term and providing inaccurate information regarding his residence would have been an MSR violation. Further, on the day the search warrant was executed by the police, defendant was found outside the apartment and in possession of keys that unlocked the apartment. Although defendant asserted the apartment belonged to his girlfriend, he acknowledged staying there on occasion. Finally, DNA matching defendant's DNA profile was found on both the gun and its magazine. Based upon this evidence, a rational trier of fact could have found, beyond a reasonable doubt, both that defendant had knowledge of the presence of the weapon in the apartment and that he exercised control over the premises.

¶ 32 To support his challenge to the sufficiency of the evidence, defendant relies heavily on the First District's decision in *People v. Macias*, 299 Ill. App. 3d 480, 482-83, 701 N.E.2d 212, 214-15 (1998), where the defendant was found guilty of drug- and gun-related charges after those items of contraband were found in a padlocked bedroom of an apartment. Evidence presented in the case showed a police officer observed the defendant enter the building where the apartment was located and minutes later, lights went on in the apartment. *Id.* at 482. The next day, the police obtained a search warrant for both the defendant and the apartment. *Id.* The defendant was stopped at a location other than the apartment building and found in possession of keys that unlocked the apartment building, the subject apartment, and the padlocked bedroom where the contraband was

- 11 -

found. *Id.* However, the police "found no evidence that [the] defendant resided in the apartment" and "also did not find any fingerprints of [the] defendant within the apartment." *Id.* During his case, the defendant maintained his friend lived in the apartment and gave him the keys while hospitalized in the event the friend needed the defendant to bring him clothing. *Id.* at 483.

¶ 33       On review, the First District reversed, finding the evidence was insufficient to establish the defendant's guilt beyond a reasonable doubt. *Id.* at 485. In so holding, the court stated as follows:

> "Here *** there was no corroborating evidence offered to link [the] defendant with the narcotics and weapons other than the testimony of [the officer who observed the defendant enter the apartment building]. No utility bills in [the] defendant's name were discovered in the apartment, no fingerprint evidence was offered, and the record indicates that others had access to the apartment. The prosecution has the burden to prove that [the] defendant was responsible for the presence of the narcotics. [Citation.] We find that these facts, combined with [the] defendant's testimony which was corroborated, cast doubt on [the] defendant's knowledge of the possession of the contraband and cast doubt on [the] defendant's immediate and exclusive control of the contraband. *Id.* at 487-88.

¶ 34       We find *Macias* is factually distinguishable from the present case. Notably, here, not only did defendant physically possess keys unlocking the apartment, he reported the apartment as his residence for purposes of his MSR, and the State presented DNA evidence linking him to the weapon discovered inside. Further, unlike in *Macias*, defendant was stopped by the police as he arrived at the apartment with the keys in his possession. Additionally, even by his own

- 12 -

admission, defendant sometimes stayed at the apartment and kept a personal article of clothing inside.

¶ 35        In *People v. Cunningham*, 309 Ill. App. 3d 824, 828, 723 N.E.2d 778, 782 (1999), the First District found sufficient evidence was presented to show the defendant's constructive possession of drugs found in a house where "substantial evidence" was presented that the defendant lived at that address. In particular, the court noted the defendant "carried keys to the house," the house's address was on the defendant's driver's license, the defendant's mail was delivered to that address, "and [the] defendant gave that address to his parole officer and to the police when he was arrested." *Id.* Although evidence that defendant lived at the Country Fair Drive apartment is not quite as "substantial" in this case as it was in *Cunningham*, we find it was, nevertheless, sufficient to support a determination that defendant resided in, and exercised control over, the apartment.

¶ 36        Finally, that others also had access to the apartment or the gun does not preclude a finding that defendant constructively possessed the gun, particularly in light of the evidence that he identified the apartment as his residence while on MSR and the DNA evidence linking him to the gun. See *Hester*, 271 Ill. App. 3d at 961 ("If two or more people share immediate and exclusive control over an object, or share the intention and power to exercise control over it, then each person has possession."). Although defendant points out a mixture of DNA profiles was found on the gun, the evidence also showed that a single "major male profile" or "contributor" was found that matched defendant's DNA profile.

¶ 37        In this case, the record reflects the State presented evidence establishing defendant's constructive possession of the handgun found in the Country Fair Drive apartment.

That evidence was not so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt as to his guilty of the charged offenses. Accordingly, we find defendant's challenge to the sufficiency of the State's evidence is without merit.

¶ 38                                    B. Rule 431(b) Questioning

¶ 39            On appeal, defendant next argues the trial court erred when questioning potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). He contends, the court improperly "conflated" the four principles set forth in the rule "into one broad instruction of law" and, as a result, did not properly ascertain the jurors' understanding and acceptance of each principle. Defendant acknowledges that he failed to preserve this issue for appellate review by not raising it with the trial court; however, he maintains his forfeiture of the issue may be excused under the plain-error doctrine because clear and obvious error occurred and the evidence at trial was closely balanced.

¶ 40            A defendant forfeits an issue on appeal by failing to raise an objection to the alleged error at trial and include the issue in a posttrial motion. *People v. Belknap*, 2014 IL 117094, ¶ 47, 23 N.E.3d 325. As defendant argues, however, forfeited errors may be reviewed under the plain-error doctrine "where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant." *Id.* ¶ 48. "The first step of plain-error review is determining whether any error occurred." *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010).

¶ 41            Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) sets forth certain requirements for the trial court when questioning prospective jurors during *voir dire*, providing as follows:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section."

On review, we decide *de novo* whether the trial court's questioning of jurors was in compliance with Rule 431(b). *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 37, 959 N.E.2d 693.

¶ 42    In *Thompson*, 238 Ill. 2d at 607, the supreme court found noncompliance with Rule 431(b) where the trial court failed to address one of the four Rule 431(b) principles and failed to ask prospective jurors whether they accepted another principle. In reaching its decision, the court determined that "[t]he language of Rule 431(b) is clear and unambiguous," requiring a court to ask potential jurors whether they understand and accept the enumerated principles. *Id.* Further, it noted that the committee comments to the rule emphasized that it was impermissible for a court to "give 'a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law.' " *Id.* (quoting Ill. S. Ct. R. 431(b), Committee Comments (adopted Apr. 3, 1997)). Ultimately, the court stated as follows:

"Rule 431(b), therefore, mandates a specific question and response process.

The trial court must ask each potential juror whether he or she understands and accepts each of the principles in the rule. The questioning may be performed either individually or in a group, but the rule requires an opportunity for a response from each prospective juror on their understanding and acceptance of those principles." *Id.*

¶ 43    Here, the trial court advised all potential jurors, in groups of four or less (sometimes individually), of the four Rule 431(b) principles. Immediately after reciting the principles, the court asked each individual juror whether he or she understood and accepted the recited principles. Thus, the record reflects each prospective juror was questioned by the court and, consistent with Rule 431(b), had the opportunity to respond to inquiries regarding his or her understanding and acceptance of all the principles set forth in the rule. Under these circumstances, we find compliance with both Rule 431(b) and *Thompson*.

¶ 44    As stated, defendant argues the trial court improperly "conflated" the Rule 431(b) principles by reciting them together, without interruption, before asking jurors whether they understood and accepted the principles. He maintains that, instead, the court should have recited each principle separately, followed immediately by questions to determine the jurors' understanding and acceptance of the recited principle. Moreover, although defendant acknowledges a previous decision of this court—*People v. Willhite*, 399 Ill. App. 3d 1191, 927 N.E.2d 1265 (2010)—that found no Rule 431(b) violation under circumstances similar to the case at bar, he asserts that case should not be relied upon because its rationale was based on a First District case that was later reversed and vacated—*People v. McCovins*, 399 Ill. App. 3d 323, 928 N.E.2d 486, (2010), *vacated*, 239 Ill. 2d 574, 940 N.E.2d 1151 (2011); *People v. McCovins*, 2011

- 16 -

IL App (1st) 081805-B, 957 N.E.2d 1194.

¶ 45    We disagree with defendant's analysis of the aforementioned cases and do not find that his proposed method of inquiry is required by either Rule 431(b) or relevant case authority. In fact, this court has recently rejected the precise arguments he makes on appeal and, consistent with *Willhite*, found no Rule 431(b) violation where, like the present case, the trial court recited the Rule 431(b) principles together before questioning whether the jurors understood and accepted the principles. See *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 5. In so holding, we noted the trial court's inquiry "provided the opportunity for each juror to respond" and rejected the defendant's assertion that either *Thompson* or Rule 431(b) requires a trial court to "address[ ] each principle 'separately.' " *Id.* ¶ 62.

¶ 46    In discussing *Willhite*, we noted "we declined to find that the plain language of [Rule 431(b)] required 'the trial court to ask jurors individually about each principle' " and "held that Rule 431(b) simply requires that a trial court '(1) *sua sponte* question each potential juror as to whether he understands and accepts the [Rule 431(b)] principles (2) in a manner that allows each juror an opportunity to respond.' " *Id.* ¶ 64 (quoting *Willhite*, 399 Ill. App. 3d at 1195-96). Further, we stated that "[c]ontrary to [the] defendant's assertions on appeal, our rationale in *Willhite* was not solely reliant on an earlier, vacated version of *McCovins*." *Id.* Significantly, in *Kinnerson*, we also pointed out that *McCovins* was "clearly distinguishable" from the facts at issue, as it involved circumstances where the trial court " 'merely provided the prospective jurors with a broad statement of legal principles interspersed with commentary on courtroom procedure and the trial schedule, and then concluded with a general question about the potential jurors' willingness to follow the law.' " *Id.* ¶ 63 (quoting *McCovins*, 2011 IL App (1st) 081805-B, ¶ 36).

- 17 -

¶ 47　　　　On appeal, defendant cites additional case authority to support his contention that the court erred in "conflating" the Rule 431(b) principles. However, like *McCovins*, that case authority is factually distinguishable from the facts at issue here and does not warrant a finding that the trial court in this case violated Rule 431(b). See *People v. Stevens*, 2018 IL App (4th) 160138, ¶ 26, 115 N.E.3d 1207 (finding noncompliance with Rule 431(b) based on the trial court's failure to ask "whether the jurors understood the State's burden to prove [the] defendant guilty beyond a reasonable doubt or the fact that [the] defendant was not required to present evidence on his own behalf"); *People v. Othman*, 2019 IL App (1st) 150823, ¶ 65, 143 N.E.3d 32 (finding noncompliance with Rule 431(b) where the trial court "failed to ask if the jury understood principles one and four or if it accepted principle two").

¶ 48　　　　Based on the reasoning set forth in both *Willhite* and *Kinnerson*, we find no error in the Rule 431(b) method of inquiry engaged in by the trial court in this case. Because we find no error, there can be no plain error and defendant's forfeiture of this issue is not excused.

¶ 49　　　　　　　　　　　　C. Excessive Sentence

¶ 50　　　　Finally, defendant challenges the 22-year sentence imposed by the trial court as excessive, arguing it was greatly at variance with the spirit and purpose of the law given "the mitigating evidence demonstrating his rehabilitative promise." Specifically, defendant asserts the court gave "too much weight to aggravating factors" and not "enough weight" to mitigating factors, including his youth, lack of gang affiliation, desire to raise his young son, completion of the "Lincoln's Challenge program," and desire to go to school and engage in drug treatment.

¶ 51　　　　The Illinois Constitution states "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful

- 18 -

citizenship." Ill. Const. 1970, art. I, § 11. "In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed." (Internal quotation marks omitted.) *People v. Lawson*, 2018 IL App (4th) 170105, ¶ 33, 102 N.E.3d 761. Further, "a defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense." *People v. Shaw*, 351 Ill. App. 3d 1087, 1093-94, 815 N.E.2d 469, 474 (2004).

¶ 52         "On review, the sentence imposed by the trial court will not be reversed absent an abuse of discretion." *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20, 143 N.E.3d 794. "In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Id.* at 54.

¶ 53         Here, defendant was sentenced in connection with his conviction for being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2014)). "Being an armed habitual criminal is a Class X felony" (*id.* § 24-1.7(b)), subjecting defendant to a sentencing range of 6 to 30 years in prison (730 ILCS 5/5-4.5-25(a) (West 2014)).

¶ 54         Initially, we note that in his postsentencing motion, defendant challenged his 22-year sentence based only on factors related to his youth, arguing he was a "young man" and the lack of evidence "that the gun *** was used *** in any criminal activity, other than the mere possession of said gun." Accordingly, he has clearly forfeited claims that he now raises for the

first time on appeal, including that the trial court failed to consider, or give adequate consideration to, his lack of any gang affiliation, desire to raise his son, completion of the "Lincoln's Challenge program," and purported desires to further his education and engage in drug treatment. See *People v. Hillier*, 237 Ill. 2d 539, 544, 931 N.E.2d 1184, 1187 (2010) ("[T]o preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required.").

¶ 55        However, even if we were to ignore defendant's forfeiture in this case, we would find the record does not reflect an abuse of the trial court's sentencing discretion. In this instance, the court clearly considered defendant's youth as a mitigating factor but determined its effect was "attenuate[d]" by his criminal history. That criminal history included two prior adult felony convictions, unsuccessful attempts at probation, and imprisonment in DOC. Further, evidence presented to the court showed defendant was on MSR when he committed the underlying offenses and, while those offenses were pending, he engaged in activities that resulted in additional charges related to the sale of drugs. Ultimately, we can find no abuse of discretion in the court's finding that evidence of defendant's youth and its impact on his rehabilitative potential was weakened by evidence of his repeated and continued involvement in the criminal justice system.

¶ 56        As to the remaining factors, defendant argues the trial court either gave insufficient weight or failed to consider, we similarly find no abuse of discretion. First, we note the court did reference several of the factors raised by defendant on appeal when setting forth its sentencing decision. Specifically, it noted defendant's completion of the "Lincoln's Challenge program" as well as the fact that he had fathered a child. Again, however, its comments suggest it found the mitigatory effect of such evidence was reduced or negated by defendant's other actions.

Specifically, the court found defendant failed to "use what he had learned from the [Lincoln's Challenge] program constructively" and that, not only had he failed to provide financial support for his child, he was not "a responsible paternal figure" given his "life choices." It pointed out that the Country Fair Drive residence was shared by defendant and his child's mother and, thus, one where guns and drugs were present when defendant was in the home.

¶ 57      The trial court also commented on defendant's use of alcohol and drugs and his acknowledgement of a substance-abuse problem. However, the court was not required to accept without question defendant's assertion that he wished to engage in treatment. The court's comments on the subject, in fact, indicate that it did not accept defendant's representations as it noted he had received opportunities for community-based sentences in the past and "apparently never sought help for those issues."

¶ 58      Second, although defendant references factors he asserts should have been viewed as mitigating and that the trial court did not explicitly comment on, *i.e.*, his lack of any gang affiliation and desire to continue his education, we can find no abuse of discretion by the court. Evidence related to those factors was presented through the PSI report, which the court clearly stated it had considered. Again, the court was not required to accept defendant's bald assertions as to his future intentions. Nor was it error for the court to find that neither factor outweighed aggravating evidence in the case.

¶ 59      Here, the sentenced imposed by the trial court was well within the applicable statutory sentencing range. Given the evidence presented in the case, we do not find that the imposed sentence was "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Fern*, 189 Ill. 2d at 54. Accordingly, defendant's

assertion that his 22-year sentence is excessive is without merit.

¶ 60                                 III. CONCLUSION

¶ 61           For the reasons stated, we affirm the trial court's judgment.

¶ 62           Affirmed.