NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (4th) 220047-U

NO. 4-22-0047

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 4, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JASON CORDRAY, | ) | No. 18CF242 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

---

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The motion of the Office of the State Appellate Defender to withdraw as defendant's appellate counsel is granted, and the trial court's decision declining to appoint new counsel following remand for a preliminary *Krankel* inquiry is affirmed.

¶ 2   Following an August 2019 jury trial, defendant, Jason Cordray, was found guilty of one count of criminal trespass to a residence, a Class 4 felony (720 ILCS 5/19-4(a)(2), (b)(2) (West 2018)). Thereafter, the trial court sentenced defendant to three years' imprisonment. Defendant appealed, arguing, *inter alia*, the trial court failed to conduct a proper preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), concerning claims of ineffective assistance of counsel he raised in a posttrial motion. Addressing this issue only, this court remanded the matter to the trial court for a *Krankel* inquiry. See *People v.*

*Cordray*, 2021 IL App (4th) 200075-U. The trial court conducted the required *Krankel* inquiry in December 2021 with defendant, defense counsel, and the State present. Following statements from defendant and defense counsel, the court declined to appoint new counsel to investigate defendant's claims.

¶ 3 The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal. OSAD has filed a motion to withdraw as appellate counsel, alleging an appeal would be frivolous. Defendant has not filed a response to OSAD's motion. For the following reasons, we grant OSAD's motion and affirm the trial court's judgment.

¶ 4 I. BACKGROUND

¶ 5 A. The State's Charges

¶ 6 In August 2018, the State charged defendant by information with one count of criminal trespass to a residence, a Class 4 felony (720 ILCS 5/19-4(a)(2), (b)(2) (West 2018)).

¶ 7 B. Jury Trial

¶ 8 On August 15, 2019, the matter proceeded to a jury trial. At the outset of the proceedings, the trial court inquired whether any plea offers were extended. The State responded in the affirmative, stating, "The last offer tendered would have been two years conditional discharge, time served, mandatory minimum fines, fees, costs, and assessments," with which defense counsel agreed. However, counsel indicated defendant still wished to exercise his right to a jury trial. The court confirmed defendant understood the State's offer was the minimum penalty permitted by statute and, if found guilty, he was eligible to receive a sentence of up to six years in prison. The court then asked, "And having considered that and discussed that, you wish to reject this offer even knowing that it is the very minimum you can receive *** and that you're

likely to receive something greater than that since that's the very minimum sentence should you be found guilty?" Defendant answered, "Yes."

¶ 9          During jury selection, the trial court—while discussing the nature of the case, the parties and procedures involved in a jury trial, and general principles of law—addressed the potential jurors as follows:

> "THE COURT: This is a criminal trial. There are certain propositions of law that you must be willing to follow. I am going to recite those for you now. Please listen carefully because I will be asking if you understand these principles of law and if you accept these principles of law.
>
> So first, a person accused of a crime is presumed to be innocent of the charge against him. The fact that a charge has been made is not to be considered as any evidence or presumption of guilt against the Defendant.
>
> The presumption of innocence stays with the Defendant throughout the trial and is not overcome unless from all of the evidence you believe the State proved the Defendant's guilt beyond a reasonable doubt.
>
> The State has the burden of proving the Defendant's guilt beyond a reasonable doubt. The Defendant does not have to prove his innocence. The Defendant does not have to present any evidence on his own behalf and does not have to testify if he does not wish to. If the Defendant does not testify, that fact must not be considered by you in any way in arriving at your verdict.
>
> So by a show of hands, do each of you understand these principles of law? If so, please raise your hands.
>
> PROSPECTIVE JURORS: (All raise hands.)

THE COURT: And do each of you accept these principles of law? If so, please raise your hands again.

PROSPECTIVE JURORS: (All raise hands.)

THE COURT: So for the record, all hands were raised."

For the remaining jurors, the trial court repeated the process and admonished them in the same manner as it had the first group. The court again asked, "So by a show of hands, do each of you understand these principles of law?" All members of the venire raised their hands. The court then asked, "And do each of you accept these principles of law?" All members of the venire again raised their hands.

¶ 10        At trial, Deputy Brian Hoffmeyer of the Livingston County Sheriff's Department testified he responded to a call for "a subject removal" at approximately 8 p.m. on August 15, 2018, at 1512 South Hawthorne Road in Streator, Illinois. Although defendant was not present by the time Hoffmeyer arrived, he was informed by Ronald Plesko, the homeowner, "that [defendant] was not allowed on the property." At that time, the home was occupied by Ronald's older brother, George Plesko, who was "in his 90's," "extremely hard of hearing," and "[a] bit frail of body." After speaking with Ronald, Hoffmeyer suggested defendant be served with a no-trespass notice to the residence, which the State introduced as People's exhibit No. 1. Hoffmeyer eventually located defendant "walking along the sidewalk in the LaSalle County portion of Streator" at approximately 11:49 p.m. that evening. Hoffmeyer "advised [defendant] that [he] had a no trespass order to serve to him. That the no trespass order was for the property and residence at 1512 South Hawthorne Road. That the no trespass order took effect immediately and basically remained in effect forever or until Ronald Plesko changed his mind." Hoffmeyer testified he told defendant, "once he was served with this no trespass order[,] that it would be

- 4 -

effectively illegal for him to be at the property and that if he were found there or seen there he risked getting arrested and going to jail and charged with trespassing to the residence." While defendant "refused to sign the copy prior to receiving it," Hoffmeyer testified he gave defendant his copy of the no-trespass notice.

¶ 11 However, Hoffmeyer "had a hunch or a gut instinct that [defendant] was going to disobey the no trespass order" and returned to the residence approximately 30 minutes later. After exiting his patrol car, Hoffmeyer "heard a voice coming from the north side of the house." Hoffmeyer "walked *** to the northwest corner of the house" and "looked around the corner of the house to find [defendant's] leg, which was in a cast at the time, *** hanging out of the window." According to Hoffmeyer, "[o]nce the leg had disappeared inside the house," he observed defendant stand up inside the kitchen. Hoffmeyer then "knocked on the door, and [defendant] answered the door." After taking defendant into custody, Hoffmeyer checked the residence for any other occupants and found George "in his bedroom on his bed asleep." Hoffmeyer then "woke him up *** to fill him in as to why there was a cop standing over him in the middle of the night *** in the bedroom of his residence" and left.

¶ 12 Ronald Plesko testified he owned the residence located at 1512 South Hawthorne Road in Streator, Illinois, which he leased to George, free of rent, in August 2018. However, Ronald testified George was currently "in a nursing home" due to his declining health. When asked by the State to describe George's physical and mental condition, Ronald stated, "[H]e has trouble remembering; and he's stone deaf. *** He's got a defibrillator and a pacemaker; *** and he's having problems right now with his legs." On the date of the incident, Ronald spotted defendant "in the yard" of the property, and defendant was told to leave. Ronald testified he was familiar with defendant and knew he had been arrested "several times." Further, Ronald testified

he never gave defendant permission to be on the property. Eventually, Hoffmeyer arrived and "had [Ronald] sign a paper to have [defendant] arrested for being on the property."

¶ 13      Defendant testified on his own behalf and stated he had been acquainted with the Plesko family his entire life. As of the time of trial, defendant was serving a term of mandatory supervised release (MSR) for a previous conviction of domestic battery. According to defendant, his parole officer had approved him to live with George at 1512 South Hawthorne Road, and he had resided at that address since May 2018. Defendant claimed no one told him he was not allowed on the premises. Defendant also claimed he paid George rent and kept his personal belongings at the residence. However, defendant acknowledged he (1) received the no-trespass notice from Hoffmeyer, (2) returned to the property despite being told not to do so, and (3) opened the door of the residence for Hoffmeyer when he knocked.

¶ 14      Ultimately, the jury found defendant guilty of criminal trespass to a residence.

¶ 15                    C. Relevant Posttrial Proceedings

¶ 16      On August 19, 2019, defendant filed a *pro se* motion for judgment notwithstanding verdict and motion for a new trial, arguing he was denied the effective assistance of counsel. Specifically, the motion alleged defendant was entitled to live at the residence because (1) he was paroled to that address, and parole would not have released him to that address if he did not have a right to be there; (2) defendant possessed a rent receipt from George, who he believed was the owner of the premises; and (3) defendant's state identification card showed that the address in question was his residence. The motion further alleged this information was provided to defendant's trial counsel, who failed to offer it as evidence during trial.

¶ 17	In September 2019, the trial court conducted a hearing on defendant's posttrial motion. At that hearing, the court reminded defendant he was still represented by counsel and could not file *pro se* motions. Upon hearing this, defendant indicated he wanted to proceed *pro se*, and the court admonished defendant about his right to waive counsel pursuant to Illinois Supreme Court Rule 401 (eff. July 1, 1984). After finding defendant's waiver of counsel knowing and voluntary, the court released defense counsel from the proceedings.

¶ 18	Defendant then attempted to introduce exhibits he claimed entitled him to live at the residence. The trial court denied their admission and refused to consider them because, the court said, new evidence could not be introduced during a hearing on a motion for a new trial or judgment notwithstanding the verdict. The court allowed the State to argue against defendant's motion before ultimately denying it. In doing so, the court found, in relevant part, defendant received competent representation at trial, there was nothing to suggest trial counsel was ineffective, and even if these documents were provided to trial counsel, he was "entitled to the benefit of the doubt with regards to trial strategy decisions." At no point did the court further question defendant on the specifics of how his trial counsel was ineffective, nor did it seek input or a response to defendant's allegations from defense counsel.

¶ 19	In October 2019, the trial court commenced defendant's sentencing hearing. During his statement in allocution, defendant made several rambling and incoherent statements, prompting the court to inquire whether he was under the influence of something. Upon further questioning, the court decided to continue the hearing, revoke defendant's bond, and order defendant be drug tested.

¶ 20	When the parties reconvened for sentencing in November 2019, it was revealed defendant tested positive for cocaine, methamphetamine, and alcohol. The trial court

subsequently found defendant in direct criminal contempt of court for appearing at the October 2019 hearing intoxicated. Ultimately, the court sentenced defendant to 180 days in the county jail for direct criminal contempt—to be served consecutively to defendant's 3-year prison sentence for the underlying conviction of criminal trespass to a residence—and ordered him transferred to the Illinois Department of Corrections (DOC) upon completion of his 180-day sentence.

¶ 21                                    D. Direct Appeal

¶ 22          On direct appeal, defendant argued, *inter alia*, the trial court failed to conduct a proper *Krankel* inquiry concerning his claims of ineffective assistance of counsel raised in his *pro se* motion for judgment notwithstanding the verdict and motion for a new trial. *Cordray*, 2021 IL App (4th) 200075-U, ¶¶ 7, 13. This court ultimately agreed with defendant, finding the trial court improperly "foreclosed defendant from attempting to present the recommended elaboration of his claims," and we remanded the matter to the trial court with instructions to conduct a proper *Krankel* inquiry. See *Cordray*, 2021 IL App (4th) 200075-U, ¶¶ 27, 29.

¶ 23                              E. Preliminary *Krankel* Inquiry

¶ 24          In December 2021, the trial court held the required *Krankel* inquiry to investigate defendant's claims of ineffective assistance. The court proceeded by going through each claim, allowing defendant an opportunity to explain or elaborate. The court did not permit the State to participate in its investigation into the factual bases of defendant's claims. The court also periodically interjected and asked defendant for additional information. In response to the court's questioning, defendant alleged trial counsel, despite being asked to do so, failed to get a written statement from George that he sublet the premises to defendant.

¶ 25          The trial court then asked defense counsel for his position. According to counsel, defendant explained to him "that he had the right to be present at that address at the time of this

case." Counsel pointed out defendant "had been served *** a notice that he was not to be back at the house," but defendant "did not believe that that notice was binding on him because *** he had been paroled there." Counsel also attempted to obtain the presence of George but "[did] not believe that health[-]wise he was available to testify." Counsel explained "at the time of the trial[,] and for some time before that, [George] had been hospitalized and then *** was at a nursing home and was not *** physically available to testify." Due to George's unavailability, counsel told defendant they would be unable to present any written statement from him. Although defendant "did provide [counsel] with a written document showing that he had paid money to George," counsel "had concerns regarding the hearsay nature of that" because defendant "was not the creator of that document."

¶ 26    After considering defendant's factual allegations and the responses of defense counsel, the trial court stated it recalled the trial "very clearly" and "understood *** the evidence and arguments of [defendant] and [counsel] concerning the admissibility and/or use of certain evidence." Ultimately, the court found defendant's allegations related to matters of trial strategy, and thus, did not rise to the level of ineffective assistance. In doing so, the court noted the case "was not a difficult [one] from a factual or legal standpoint. [Defense counsel] was prepared for trial. He was familiar with the case and the issues in the case and did the best he could with the facts and evidence that he had." The court further noted:

> "[T]he problem for the [d]efendant here is not the performance of his attorney.
> It's the fact by which [defense counsel] was limited. The evidence against
> [defendant] was not closely balanced; and, in fact, [defendant] admitted the key
> elements in his case, specifically that he was served with a no trespass; and then
> he proceeded to go into the house."

¶ 27        This appeal followed. OSAD, appointed counsel for defendant on appeal, filed a motion for leave to withdraw as defendant's counsel and attached a supporting memorandum of law, citing *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d 384, 231 N.E.2d 390 (1967). This court granted defendant leave to file additional points and authorities on or before July 8, 2022. None have been filed.

¶ 28                              II. ANALYSIS

¶ 29        On appeal, OSAD identifies five potential issues and asserts this case presents no meritorious issues for review. Defendant has not filed any response in opposition to appellate counsel's motion to withdraw. Therefore, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 30                          A. Rule 431(b) Compliance

¶ 31        OSAD first asserts no colorable claim can be made the trial court failed to substantially comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) by collapsing the four principles, or *Zehr* admonishments (see *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984)), into one statement of the law during its questioning of the prospective jurors. We agree.

¶ 32        Whether a trial court has violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and, if so, the effect of noncompliance, is reviewed *de novo*. *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 59, 170 N.E.3d 142. The rule is simple—the trial court is to ask each prospective juror in a criminal case whether they both "understand" and "accept" that (1) the defendant is presumed innocent, (2) the State bears the burden of proving the defendant guilty beyond a reasonable doubt, (3) the defendant has no obligation to present evidence, and (4) the defendant's choice to not testify cannot be held against him. Ill. S. Ct. R. 431(b) (eff. July 1,

2012). Although Rule 431(b) "mandates a specific question and response process" (*People v. Thompson*, 238 Ill. 2d 598, 607, 939 N.E.2d 403, 409 (2010)), it "has no requirement that the trial court ask separate questions of the jurors about each individual principle. [Citation.] Nor does the rule require separate, individual answers from each juror." *People v. Willhite*, 399 Ill. App. 3d 1191, 1196-97, 927 N.E.2d 1265, 1270 (2010); see also *People v. Birge*, 2021 IL 125644, ¶ 27, 182 N.E.3d 608 (holding no error occurred where the trial court listed all four *Zehr* principles together, rather than individually, prior to asking each jury group whether they understood and accepted the principles).

¶ 33        Here, the trial court complied with Rule 431(b). The court explained to each panel of potential jurors (1) defendant was presumed innocent; (2) the State had the burden of proving defendant guilty beyond a reasonable doubt; (3) defendant did not have to present any evidence; and (4) defendant did not have to testify, and the jury could not hold it against him if he decided not to testify. Instead of asking if the potential jurors understood and accepted each principle set forth in Rule 431(b), the court stated all four principles together and then asked if the potential jurors understood and accepted the principles. As noted *supra*, our supreme court in *Birge* recently held the trial court in that case did not err when it listed all four *Zehr* principles together, rather than individually, prior to asking each panel of potential jurors whether they understood and accepted them. *Birge*, 2021 IL 125644, ¶ 27. Accordingly, we conclude the trial court's procedure here passes muster because it accurately conveyed each of the *Zehr* principles and allowed for the question and response process contemplated by the rule.

¶ 34                                B. Sufficiency of the Evidence

¶ 35        OSAD asserts no colorable argument can be made the State failed to prove defendant guilty beyond a reasonable doubt of criminal trespass to a residence. We agree.

¶ 36        When a defendant challenges the sufficiency of the evidence to convict, a reviewing court determines whether any rational trier of fact could have found the required elements of the crime beyond a reasonable doubt when the evidence presented at trial is viewed in a light most favorable to the prosecution, with all reasonable inferences drawn in favor of the State. *People v. Newton*, 2018 IL 122958, ¶ 24, 120 N.E.3d 948. It is not a function of this court to retry a defendant when reviewing a challenge to the sufficiency of the evidence. *People v. Nere*, 2018 IL 122566, ¶ 69, 115 N.E.3d 205. Rather, "[i]t is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *People v. Bradford*, 2016 IL 118674, ¶ 12, 50 N.E.3d 1112. We reverse a conviction only where the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *People v. Belknap*, 2014 IL 117094, ¶ 67, 23 N.E.3d 325.

¶ 37        To prove defendant guilty of criminal trespass to a residence, the State must present evidence to establish defendant (1) knowingly entered the residence of another, (2) entered the residence without authority, and (3) knew or had reason to know one or more persons were present in the residence at the time of entry. 720 ILCS 5/19-4(a)(2) (West 2018).

¶ 38        Here, OSAD argues there is no basis on which to challenge the sufficiency of the evidence. The evidence against defendant was overwhelming. At trial, Hoffmeyer testified he responded to a call for "a subject removal" at approximately 8 p.m. on August 15, 2018, at 1512 South Hawthorne Road in Streator, Illinois. Although defendant was not present by the time Hoffmeyer arrived, he was informed by Ronald, the homeowner, "that [defendant] was not allowed on the property." After speaking with Ronald, Hoffmeyer suggested defendant be served with a no-trespass notice to the residence, which the State introduced as People's exhibit No. 1.

Hoffmeyer eventually located defendant "walking along the sidewalk in the LaSalle County portion of Streator" at approximately 11:49 that evening and "advised [defendant] that [he] had a no trespass order to serve to him." Hoffmeyer explained to defendant "the no trespass order was for the property and residence at 1512 South Hawthorne Road. That the no trespass order took effect immediately and basically remained in effect forever or until Ronald Plesko changed his mind." Hoffmeyer testified he also told defendant "once he was served with this no trespass order[,] that it would be effectively illegal for him to be at the property and that if he were found there or seen there he risked getting arrested and going to jail and charged with trespassing to the residence." While defendant "refused to sign the copy prior to receiving it," Hoffmeyer stated defendant took his copy of the no-trespass notice.

¶ 39    Unfortunately for defendant, Hoffmeyer's "hunch or a gut instinct that [defendant] was going to disobey the no trespass order" proved correct and, upon returning to the residence shortly after midnight, Hoffmeyer heard a voice, looked around the corner of the house, and saw defendant's leg outside the window before defendant entered. Hoffmeyer observed defendant stand up inside the kitchen. Hoffmeyer then "knocked on the door, and [defendant] answered the door." Defendant was then taken into custody, advised he was under arrest for trespassing, handcuffed, and placed in Hoffmeyer's squad car for transport. Ronald Plesko testified he owned the residence located at 1512 South Hawthorne Road in Streator, Illinois, which he leased to his older brother, George, free of rent. However, Ronald testified George was currently "in a nursing home" due to his declining health. Ronald testified George "has trouble remembering; and he's stone deaf. *** He's got a defibrillator and a pacemaker; *** and he's having problems right now with his legs." On the date of the incident, Ronald spotted defendant "in the yard" of the property, and defendant was told to leave. Ronald testified

- 13 -

he was familiar with defendant and knew defendant had been arrested "several times." More importantly, Ronald testified he never gave defendant permission to be on the property. Eventually, Hoffmeyer arrived and "had [Ronald] sign a paper to have [defendant] arrested for being on the property."

¶ 40    Finally, defendant testified on his own behalf and stated his parole officer previously approved him to live with George at 1512 South Hawthorne Road. Defendant claimed he was not told he was not allowed on the premises. He further claimed he paid rent to George and kept his personal belongings at the residence. However, defendant ultimately acknowledged he (1) received the no-trespass notice from Hoffmeyer, (2) returned to the property despite being told not to do so, and (3) opened the door of the residence for Hoffmeyer when he knocked.

¶ 41    As stated, "[i]t is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *Bradford*, 2016 IL 118674, ¶ 12. Because the jury was in a superior position to assess witness credibility and conflicts in testimony, we will not reverse the decision where the evidence was not so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt as to defendant's guilt. See *Belknap*, 2014 IL 117094, ¶ 67. Accordingly, after reviewing the evidence in the light most favorable to the State, we agree with OSAD and conclude there is no arguable merit to a claim the State failed to prove defendant guilty beyond a reasonable doubt. See *Newton*, 2018 IL 122958, ¶ 24.

¶ 42                    C. Preliminary *Krankel* Inquiry

¶ 43    OSAD additionally contends any argument the trial court failed to conduct a preliminary *Krankel* inquiry would be meritless. We agree.

- 14 -

¶ 44        "A *pro se* posttrial motion alleging ineffective assistance of counsel is governed by the common-law procedure developed by [the Illinois Supreme Court] in [*Krankel*, 102 Ill. 2d 181]." *People v. Roddis*, 2020 IL 124352, ¶ 34, 161 N.E.3d 173. When a defendant makes a *pro se* posttrial claim of ineffective assistance of counsel, "the court should first examine the factual basis of the defendant's claim." *Roddis*, 2020 IL 124352, ¶ 35. "If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel." *Roddis*, 2020 IL 124352, ¶ 35.

¶ 45        "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *People v. Moore*, 207 Ill. 2d 68, 78, 797 N.E.2d 631, 638 (2003). "During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim." *Moore*, 207 Ill. 2d at 78. "Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations." *Moore*, 207 Ill. 2d at 78. "A brief discussion between the trial court and the defendant may be sufficient." *Moore*, 207 Ill. 2d at 78. "Also, the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Moore*, 207 Ill. 2d at 79.

¶ 46        "The issue of whether the trial court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*." *Roddis*, 2020 IL 124352, ¶ 33.

¶ 47        As OSAD points out, the record reveals the trial court followed proper procedure in complying with our remand. The *Krankel* inquiry lacked participation by the State, and the

- 15 -

court conducted a thorough investigation into the factual bases of defendant's claims, allowing defendant full opportunity to elaborate on each claim and even asking for clarifying information during the process. The trial court then provided defense counsel with the opportunity to comment on each issue raised by defendant and evidence of consideration of matters outside the record is absent. Thus, even with *de novo* review, it is clear no error occurred in the court's compliance with our remand

¶ 48       As to the trial court's decision to decline to appoint counsel, we find no error. After hearing from defendant and trial counsel, the court addressed defendant's complaints and appropriately found—based on its evaluation of defendant's claims and its recollection of counsel's performance during trial—defendant's allegations lacked merit and related to matters of trial strategy. See *Roddis*, 2020 IL 124352, ¶ 35. The court also acknowledged the evidentiary hurdles that prevented some of defendant's requested evidence from being admissible at trial, as his counsel had advised. Given defendant's claims were rebutted by counsel and the outcome resulted from defendant's predicament and not failures of counsel, the court's decision regarding the appointment of counsel cannot be said to be error, let alone manifest error that is plain, evident, and indisputable. See *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 41, 982 N.E.2d 832.

¶ 49       Because the trial court provided defendant an appropriate preliminary *Krankel* inquiry and correctly declined to appoint new counsel, the court did not err. Accordingly, we agree with OSAD that there are no meritorious issues for review.

¶ 50                              D. Remaining Claims

¶ 51       Finally, OSAD contends any argument the trial court erred by imposing (1) a harsher sentence in response to defendant's exercising his constitutional right to a jury trial and

(2) consecutive sentences of 180 days in the county jail for direct criminal contempt and 3 years' imprisonment for the underlying conviction of criminal trespass to a residence pursuant to section 5-8-4(c)(1) of the Unified Code of Corrections (730 ILCS 5/5-8-4(c)(1) (West 2018)) would be without merit. Specifically, OSAD asserts defendant has completed his entire sentence, and thus, this court is unable to render any sort of effectual relief. We agree.

¶ 52        Illinois appellate courts generally do not review moot issues. *People v. Henderson*, 2011 IL App (1st) 090923, ¶ 9, 961 N.E.2d 407. "A case is moot if the issues involved in the trial court have ceased to exist because intervening events have made it impossible for the reviewing court to grant effectual relief to the complaining party." *People v. Roberson*, 212 Ill. 2d 430, 435, 819 N.E.2d 761, 764 (2004). For example, "[a] sentencing challenge is moot where defendant has completed serving his sentence." *People v. Shelton*, 401 Ill. App. 3d 564, 582, 929 N.E.2d 144, 162 (2010); see also *People v. Melton*, 2013 IL App (1st) 060039, ¶ 28, 4 N.E.3d 99 ("[A] challenge to the validity of an imposed sentence becomes moot once the entire sentence has been served.").

¶ 53        Here, OSAD tells us defendant "has now served the entirety of both sentences, including the required period of [MSR]." See *People v. Montalvo*, 2016 IL App (2d) 140905, ¶¶ 14-15, 64 N.E.3d 84 (stating a defendant's entire sentence includes the period of incarceration in DOC and the time spent on MSR). We also note defendant's information did not appear through the "Inmate Search" on DOC's website, potentially due to the following reason: "The inmate's sentence may be DISCHARGED. Inmate has completed their sentence/parole." *Inmate Search*, Illinois Department of Corrections, https://www2.illinois.gov/idoc/OFFENDER/Pages/InmateSearch.aspx (last visited Nov. 29, 2022). Thus, it is impossible to provide defendant his requested relief as he has completed

- 17 -

serving his entire sentence. Moreover, there is no evidence in the record to support defendant's claim the trial court erroneously imposed a harsher sentence in response to defendant's demand for a jury trial. Additionally, defendant's claim that his contempt sentence should have run concurrently with his sentence for criminal trespass to a residence ignores the discretionary authority of trial courts to impose a consecutive sentence for a separate contempt finding (see *People v. Hoffman*, 2020 IL App (2d) 180853, ¶ 39, 148 N.E.3d 863), and most importantly, he faces no more exposure in this case to which those days could be applied. Because no effectual relief can be granted, we conclude these potential issues are moot. See *Melton*, 2013 IL App (1st) 060039, ¶ 28.

¶ 54                                III. CONCLUSION

¶ 55            We grant OSAD's motion for leave to withdraw as appellate counsel and affirm the trial court's judgment.

¶ 56            Affirmed.